Good morning, Your Honors. May it please the Court, my name is William Keong, representing the petitioners. The petitioners are very grateful that the United States government has granted them withholding of removal. However, asylum was denied because of determination by the Immigration Court and by the Board of Immigration Appeals on the basis of firm resettlement in a third country, which is Panama. The Immigration and Nationality Act and the regulations, ACFR, defines firm resettlement as an offer by a third country before the aliens came to the United States, an offer of permanent residence, citizenship, or other forms of permanent resettlement. In the present case, Cheo, C-H-E-O v. I-N-S, decided by this Honorable Court, it further clarified that in the absence of direct evidence of such an offer, then a lengthy undisturbed residence in a third country can establish a rebuttable presumption that an individual has the right to return to that country and remain there permanently, and that would be firm resettlement. In this case, in this particular case, the petitioners did stay in Panama for nine years, but it is lengthy but not undisturbed. Records show that in Administrative Record page 449 and page 447, they, the husband and wife, they could not register their marriage. They had to hold a conventional, traditional Chinese wedding in a restaurant. They could not register because they had no status there. And they opened a business, a grocery store, but they could not apply for the business license, again, because they are illegal there. They had to use a friend's license, and they could not report their income tax because they are not recognized as a lawful permanent resident there. On the other hand, the reason they got to Panama is because through the corruption of the previous regime, General Noriega, they bought visas they got over there. And in this particular case, they got immigration documents from Panama authenticated saying that there is no record of their permanent residence, citizenship, not even entry record in Panama. So they are totally undocumented aliens in Panama. Of course, after the Operation Just Cause, the previous regime was toppled. And the new regime, according to the petitioners, the new government did not like this illegal Chinese. They were the cause of the corruption for Noriega and enriched Noriega. They paid huge monies to gain entry to Panama. And therefore, the petitioners said, when they were in Panama, they heard from the government openly announced that the new regime was going to expel Chinese aliens. And that was the purpose. And then the looting came. During that period of time, they lost their business. Their life and safety were threatened. Now, the Board of Immigration Appeals faulted the respondents for not presenting sufficient evidence to show that the Panama government actually wanted to deport these illegal Chinese there. However, the immigration judge found the petitioners credible. The Board of Immigration Appeals did not make an explicit credibility finding which deemed that they were credible then. The petitioners testified that they saw with their own eyes. Every day, Chinese were picked up and deported from Panama. If you try to get documents to stay in Panama, the government will expose yourself. And the government will pick you up and deport you. That's why, in order to leave Panama, they had to purchase fraudulent documents to flee Panama in the first place. Now, on the other hand, I would look at this situation like tantamount to illegal aliens, undocumented aliens in this country, in California. They cannot drive. They cannot get social security numbers. Even if their life is peaceful, the immigration officer never bothered them because they were unknown. So they are not called firmly resettled. In this particular case, I don't believe the board's finding of undisturbed is correct because their life was not undisturbed. There was a case, the VANG, V-A-N-G, also by dishonorable court. But in that case, the petitioner lived in France for 12 years on the basis that his parents were granted refugee status. And he himself traveled to the United States with travel documents issued by the French government. So that case is distinguishable from this particular case. I will reserve two or three minutes for rebuttal. Certainly. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. I am Josh Braunstein for the Attorney General. The evidence of record in this case is quite a long way from compelling the conclusion that the petitioners are eligible for asylum. The petitioners resided, as counsel concedes, in Panama for nine years. They owned a business, owned and operated a business, which they lost not due to persecution or any sort of harassment by the government, but due to civil unrest that followed the Noriega regime's fall. And that's evidenced by the fact that they were able to return to Panama upon not finding economic opportunities and finding and encountering resistance with Chinese coercive family planning policies. This case is... Why is this case pretty much controlled by Ali? Your Honor, I think Ali not only doesn't control this case, but it's a helpful case to look at to show how compelling the evidence is, rather substantial the evidence is, in support of the Board's decision. The facts in Ali, and I will get to the whole thing in just a second, but it's important to look at the facts. Let me begin with the holding. The court held in Ali that Ali presented direct and credible evidence that she never had a right to remain in Ethiopia permanently. Now, the facts of these two cases could not be more different. There is not... But didn't it just pretty much trash the presumption in Cheo? No, I don't think so, Your Honor. Because it doesn't purport to overrule Cheo. But if Cheo is still good law, Your Honor, then the presumption still must exist. And I read Ali as saying that, number one, if there is good and direct evidence on the record, and credible evidence, that the alien never had a right to remain there, then I think the Ali case collapses the presumption analysis. And I think it's wrongly decided. I don't think even if it were correctly decided, this case falls within it. In Ali, you have a Somali female who had terrible things happen to her in Somalia, and she fled to Ethiopia. She was in the lowest clan. And here's how it's totally distinguishable from this case. She testified that because of her clan, and she was in a very low caste, because of her status there, she knew, and it was law, I believe, she knew, she testified that she could never obtain permanent residence in Ethiopia. Now, the petitioners in this case had what was akin to permanent residence. They were there for nine years. They operated a business. They raised three children who were citizens of Panama. They had domicile there, and they came and went with absolutely no impediment from the government. The Ethiopian case, Ali, she was staying under the radar. And I think the other thing that Ali stands for is that, and the court cites to the Abdil case, is that an alien cannot adversely possess the right to remain in a country. And Ali remained under the radar and never availed herself of the immigration system in Ethiopia. And I think that is quite significant because here these petitioners applied for visa extensions a total of, by their own testimony, a total of 17 times. And that's just the extensions, 17 times. And they also, and never had any problem. In Ali, the petitioner never availed herself of, and had never any run-in with the immigration system, had absolutely no dealings with them. The other, I think, distinction that is key is, of course, that in Ali, there was never any intention of the alien to stay there. She said, we were trying to get out as soon as possible for the entire five years that she was trying to avoid being placed in a relocation camp. Now, in this case, the petitioners lived openly. They owned and operated a grocery store. And they left, by the way, not because, and the testimony is pretty clear, according to the wife, they returned to China for economic reasons. Because, Your Honor? You're skipping the reason they left Panama. You said that there's nothing to do with that. No, I'm actually getting to that right now, Your Honor. According to the wife, in the record at 516, she said a war broke out and the whole restaurant was destroyed. She referred to the grocery store as a restaurant, and I don't know why that discrepancy is in the record. But she said, we had nothing left, so that's why we returned to China. But when I went back to China and tried to seek employment, because there were so many of us, we needed to eat, and I tried to look for employment. And then she talks about sterilization. So it appears that the reason they fled was, on the record, there's evidence that it's not because of this supposed backlash by the Noriega regime, or rather as a consequence of the Noriega regime's falling. I would also note, sorry, Your Honor. There's another possible way to look at this case. Yes, they were in Panama for nine years. Let's assume we don't know anything about that status. They moved to China, found that they were going to be persecuted there. So then they went back to Panama, and maybe we measure it from the time that they went back there, and they certainly didn't get firmly settled, and couldn't get firmly settled under the new regime, and then came to the United States. That may be appropriate, Your Honor, if they had fled Panama because they were harassed or persecuted on one of the protected grounds, but they didn't. They left because they didn't have any money, and they thought they could do better in China. And so then they came back to Panama, and they had no trouble getting in. That's key, because they're not flying under the radar like the alien in Ali. So they had absolutely no difficulty moving in and out. My theory is that they were persecuted in China, and then the country of first choice, understandably, was to go back to Panama, and that they, in your theory's understanding of the record, is that they could have firmly resettled, you know, resumed their resettlement. Is that the theory? Well, in essence, Your Honor, the wife did. She stayed there for another year, and the children stayed there for between one and three years, and they lived with her sister, who was a Chinese national, living in Panama with a Chinese passport who got permanent residence. And so that further undercuts their late-breaking assertion that the backlash against the Noriega regime caused mass dissatisfaction with the Chinese presence. Her sister-in-law was shuttling the children to the United States. She was traveling back and forth to Panama, a Chinese citizen back and forth to Panama, bringing the children to the United States on visitor visas. There is, as well, Your Honor? When did the sister get permanent residence in Panama? The record doesn't say. They just testify that she is a resident, because the judge is concerned. How can you have a Chinese citizen coming in and out of Panama? The answer is, well, she got a residency there. It doesn't say, you know, when. There's another problem. There are many problems with petitioners' position, one of which is they rely on documents that they say proves that they were not in the system in Panama. There are two problems with it. One, under the Chao presumption, which I submit survives, Ali, for the reasons I said, under the Chao presumption, those documents don't prove that they couldn't go back. All they prove, if anything, is that the Panamanian government didn't keep records of them. But there is a bigger problem with the documents, which has not been explored. And I was reading the documents that they rely very heavily on in the record. The documents have a clear mistranslation of the record situation, and any Spanish speaker can say on page 16 of the record that the document doesn't say that there is no computer record of this person in our system. That's page 14 of the record. The only reasonable translation of that sentence in Spanish on page 16 is, we cannot offer you better information for reasons that our system of computers finds itself down. The computers were not working. So their sort of explosive document that is supposed to conclusively show that there's no computer record of them actually says that the computer wasn't functioning on the day that the request was responded to. Those documents, the Board gave little weight to them because of the fact that they had returned to Panama, and rightly so. I would conclude by noting two things. First, they have not a shred of evidence, which they concede in their brief. They have not a shred of evidence, not a newspaper article, not a State Department report or an Amnesty International report. There is nothing, not a magazine article, to show that the post-Noriega Panama situation was hostile to Chinese. So the fact that they may have known some Chinese people, even if credible, may have known some Chinese people who were deported, there is nothing in the record to support that it was a mass expulsion of Chinese. Lastly, if I could have one more moment, I would say that with respect to Ali, I think that indeed, Your Honor, a strict reading of Ali would totally eviscerate the presumption, and I don't think that since it expressly. Thank you, Your Honor. Subject to the Court's questions. I think it's inappropriate for the Respondent's counsel to comment on the translation, whether it was proper or not, because the immigration judge and the board relied on the transcription, that the translation with certificate of translation, everything complete in the record. And of course, I'm not educated in Spanish language. I cannot tell whether the Respondent's attorney is correct or not in his comments. However, the matter of Chiu, the Chiu v. Sinus case, basically says, in the absence of direct evidence of a grant of citizenship, permanent residence, but in our case, it's not. It's just the opposite. We have a direct evidence of non-grant. So therefore, the board has to look into whether the stay was lengthy, was peaceful, unmolested, and whether it was undisturbed. And as long as the petitioner's testimony was found to be credible, this Court has held that you don't need corroborating evidence. If you believe them, then you believe them. They testified credibly that they could not have a normal undisturbed life in Panama. They lived there under the protection of the illegal acts of Noriega. And they had to use assumed ID to run their business. And as far as they applied for extensions 17 times, which I believe the husband applied for nine times, the wife applied for seven times separately. And the record showed that there was not even a record in the Immigration Service that shows that this was indeed accomplished, maybe just unlawful dealings. And so I will submit to the Court that the petitioner's stay in Panama is not undisturbed. So they are not permanently resettled. Thank you very much, Your Honor. All right. Thank you, counsel. We appreciate the argument. The matter just argued will be submitted. And we'll mix your argument in.
judges: B. Fletcher, Rymer, Fisher